IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SANDRA L. SPESSARD**, an individual, ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> **MUTUAL OF OMAHA INSURANCE** ) </br> **COMPANY, INC.**, a Nebraska corporation, ) </br> ) </br> Defendant. ) </br> ) </br> _____ ) </br> ) | Case No. _____ </br></br></br> **COMPLAINT AND** </br> **JURY DEMAND** |

Comes now the Plaintiff, Sandra L. Spessard (hereinafter "Spessard"), for her claims against Defendant Mutual of Omaha Insurance Company (herein after "Defendant Mutual"), a Delaware corporation doing business in Nebraska, alleges as follows:

### PARTIES-VENUE-JURISDICTION

1. Plaintiff Sandra L. Spessard is a resident of Omaha, Douglas County, Nebraska and at all times relevant to this action was employed by Defendant Mutual as a Work at Home Customer Service Representative.

2. Defendant Mutual is a Nebraska corporation, doing business in Omaha, Douglas County, Nebraska.

3. This is an action seeking redress for the violation of the rights guaranteed the Plaintiff by the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. §§48-1101 to 48-1126, as amended; the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. §§48-1001 to 48-1010; the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq., as amended; and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et

1

seq., as amended, for damages suffered by Plaintiff as a result of Defendant's unlawful discrimination and retaliation.

4. This Court has original jurisdiction over the claims arising under state law and concurrent jurisdiction over the federal law claims.

5. Venue is proper as Defendant resides and/or is doing business within this judicial district, and a substantial portion of the events giving rise to Plaintiff's claims occurred within this judicial district. The Defendant is an employer as that term is defined pursuant to the applicable state and federal statutes set forth herein.

6. Prior to filing this action, on or about December 17, 2014, Plaintiff filed a Charge of Discrimination against Defendant Mutual for discrimination based on disability, age and retaliation with the Nebraska Equal Opportunity Commission ("NEOC"), NEB 2-14/15-12-45412-RS. Said charge was dually filed with the United States Equal Employment Opportunity Commission ("E.E.O.C."), EEOC 32E-2015-00190. A copy of Plaintiff's Charge of Discrimination is attached as Exhibit "A" and incorporated herein by reference. The NEOC deferred the Charge to the EEOC for investigation due to Plaintiff's charge of disability by association. On or about November 6, 2015, Plaintiff requested a Right to Sue letter from the EEOC. A copy of Plaintiff's letter is attached as Exhibit "B" and incorporated herein by reference. Thereafter, the EEOC issued Plaintiff a Right to Sue Letter. A copy of the EEOC's Right to Sue Letter is attached as Exhibit "C" and incorporated herein by reference.

## FACTUAL ALLEGATIONS

7. Plaintiff is 66 years old (DOB: 12-4-1949).

8. At all times relevant, Plaintiff was the full-time caregiver for her mother, whom suffered from Alzheimer's disease. Plaintiff's mother's medical condition required 24 hour care, which Plaintiff provided.

9. Plaintiff was hired by Defendant Mutual on or about April 11, 2011 as a Work at Home Customer Service Representative.

10. In 2012, Plaintiff applied and received intermittent Family Medical Leave to care for her mother.

11. From 2013 through the summer of 2014, Mr. David Allen ("D. Allen") (40s, no known disability by association) was Plaintiff's direct supervisor.

12. On or about August,, 2014, Mr. Patrick Acamo ("Acamo") (30s, no known disability by association) and Mr. Matt Allen ("M. Allen") (30s, no known disability by association) became Plaintiff's new immediate supervisors. Both Acamo and M. Allen were aware of Plaintiff's need to use intermittent medical leave to care for her mother.

13. On July 17, 2014, Plaintiff received her first disciplinary action from Acamo and M. Allen. Acamo and M. Allen disciplined Plaintiff for making five (5) errors in a six (6) week time period. As part of her discipline, Plaintiff was required to have weekly training meetings with Acamo for a period of 90 days; however, Acamo never held a meeting with Plaintiff and provided no training.

14. In July and August, 2014, Plaintiff began experiencing computer system problems that caused her to frequently call the Help Desk for assistance. As a result, Plaintiff requested assistance from Acamo and M. Allen, but they ignored Plaintiff's requests.

15. During July and August, 2014, Plaintiff continued to request assistance due to the computer system problems. Acamo, M. Allen, and D. Allen ignored her requests and instead merely quoted the At Home Worker's policy and told Plaintiff to come into the office if she had computer issues for 60 minutes or longer. Due to her mother's condition, Plaintiff was not able to work at the office. Each time her supervisor would request that she come into the office, Plaintiff would inform them that she could not work at the office because of her use of intermittent FMLA to care for her disabled mother.

16. During the same period of time, Acamo and D. Allen began instant messaging Plaintiff to advise her of impromptu meetings to discuss Plaintiff's performance. Unlike previous meetings, there was no meeting agenda or time to prepare for said meetings.

17. In the month of August, 2014, at the instruction of her supervisors, Plaintiff called the Help Desk over 25 times reporting computer system problems. Acamo, M. Allen and D. Allen continued to ignore Plaintiff's request for assistance.

18. On or about August 28, 2014, Acamo changed Plaintiff's shift and assigned her to the least preferred shift.

19. On or about September 9, 2014, Acamo advised Plaintiff that she must meet productivity goals despite her computer system problems.

20. On or about September 29, 2014, Plaintiff experienced computer system problems, which required Plaintiff to be on the phone with the Help Desk for several hours. Acamo demanded that Plaintiff must use her accrued personal or vacation leave for those hours that she was on the phone with the Help Desk.

4

21. On or about September 30, 2014, a meeting was held between Plaintiff, Acamo and D. Allen. Acamo and D. Allen informed Plaintiff that due to the numerous computer problems Plaintiff was experiencing, she would be required to work in the office full-time beginning on October 6, 2014. Plaintiff informed them that she was on FMLA and would not be able to work in the office. Plaintiff's co-workers that were experiencing the same computer problems were not required to work at the office.

22. After the meeting on September 30, 2014, Plaintiff emailed Ms. Shannon Hite, Vice President of Corporate Operations, and complained of the discrimination, retaliation and interference with her FMLA rights. Plaintiff stated that she felt that she was being targeted because of her age and disability by association. Plaintiff also complained to Ms. Jackie Soto, Senior Human Resources Specialist, and Ms. Peggy Rivedal, Manager Health Services.

23. On October 8, 2014, Plaintiff was called into a meeting with D. Allen in which he subjected Plaintiff to different terms and conditions of employment. D. Allen demanded that effective immediately Plaintiff should stop using Open Span (computer operating system) and begin using the old Legacy operating system. D. Allen stated that Plaintiff was not allowed to call the Help Desk. D. Allen also demanded that Plaintiff come into the office for one full day of training on the Legacy operating system. Plaintiff asked several times if anyone else was being required to work on the inferior Legacy operating system and be required to train at the office. D. Allen conceded that Plaintiff was the only employee required to do so. Plaintiff asked why she was being singled out and D. Allen explained that she was being singled out because "her issues had been escalated to management."

24. On or about October 15, 2014, Plaintiff worked at the office for Legacy computer training. Plaintiff met with Acamo wherein he provided Plaintiff with new production goals, which were different from all other employees' production goals.

25. Following this meeting, Acamo placed an asterisk (*) behind Plaintiff's name in the weekly production team summary report that was distributed to all team members. Plaintiff's name was the only name with an asterisk placed beside it.

26. On or about October 21, 2014, Plaintiff complained to Acamo that the placement of the asterisk by her name was discriminatory, but he continued to use the asterisk to single out Plaintiff.

27. On or about October 24, 2014, Plaintiff received a call from Mr. Kevin Coan, Application Systems Analyst, stating that Plaintiff was needed for testing of some fixes he had made to the Open Span computer operating system. Plaintiff advised that she was not allowed to use Open Span and would have to get permission from her supervisors. Coan stated that the other Work at Home Customer Service Representatives, Pam Kirschman and Robin Orchard, who had experienced the same problems as Plaintiff, were using the Open Span system and were no longer experiencing problems. Plaintiff contacted Acamo to ask if she could sign into Open Scan to assist with the testing. Acamo denied her access to Open Span.

28. During the period where Plaintiff was on intermittent leave, her supervisors constantly targeted and pressured her over minor or outright false claims over how Plaintiff was performing her job. Plaintiff felt she was being targeted by harassment in an effort to get her to resign.

8:16-cv-00080-JMG-CRZ Doc # 1 Filed: 02/16/16 Page 7 of 18 - Page ID # 7

29. On or about October 28, 2014, Plaintiff was allowed to work on the Open Span computer operating system.

30. Acamo completed Plaintiff's 2014 performance review and gave her a low evaluation based on the computer issues she experienced in the summer of 2014. As a result, Plaintiff was denied an increase in her salary and her incentive bonus.

31. As a result of Defendant's wrongful conduct, Plaintiff suffered stress and anxiety, as well as mental anguish, loss of enjoyment of life and humiliation.

## COUNTS I & II

(Disability Discrimination - ADA and NFEPA)

32. Plaintiff hereby incorporates by reference paragraphs 1-31 as if fully set forth herein.

33. Defendant Mutual is a covered entity and employer under 42 U.S.C §12111.

34. Plaintiff was an employee of Defendant and during her employment she cared for her mother who suffered from Alzheimer's disease.

35. Plaintiff's mother was disabled.

36. Defendant Mutual knew of Plaintiff's mother's disability and that Plaintiff cared for her disabled mother.

37. At all times relevant, Plaintiff was able to perform the essential functions of her job as a full-time Work at Home Customer Service Representative with or without reasonable accommodation.

38. Plaintiff was able to perform her job satisfactorily, but needed to use FMLA intermittently while working from home to care for her disabled mother.

7

39. Plaintiff's association with her disabled mother was a substantial motivating reason for Defendant's discrimination and adverse employment actions against Plaintiff.

40. Plaintiff's mother's disability played a part or role in Defendant Mutual's decision to change the terms and conditions of her employment.

41. Defendant Mutual's discrimination altered a term, condition, and/or privilege of Plaintiff's employment.

42. The unlawful employment practices complained of above were willful and intentional, and Defendant Mutual knew and showed reckless disregard for the fact that its conduct was prohibited by Federal law.

43. As a result of Defendant Mutual's discrimination, Plaintiff has suffered damages in the form of lost wages, benefits, loss of future pay, benefits, bonuses, emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life. Plaintiff has incurred, and will continue to incur attorney's fees and costs in this matter.

## COUNT III
(Violations of Family Medical Leave Act-29 U.S.C. 2601 et seq.)

44. Plaintiff hereby incorporates by reference paragraphs 1-43 as if fully set forth herein.

45. At all times relevant in 2014, Plaintiff was eligible for family medical leave to care for her mother, who was suffering from a serious health condition.

46. Plaintiff gave the appropriate notice for her need to be absent from work and need for family medical leave to Defendant Mutual.

47. Defendant Mutual interfered with, restrained, and/or denied the exercise of or the attempt to exercise Plaintiff's rights in violation of 29 U.S.C. §§2601 et seq. in the following ways: taking disciplinary action against Plaintiff for using FMLA; removing Plaintiff from her pervious schedule; forcing Plaintiff to use an inferior computer operating system; forcing Plaintiff to work at the office despite her need to care for her mother and use FMLA; denying Plaintiff an increase in salary and bonus; and other ways to be determined at trial of this matter;

48. As a result of Defendant Mutual's violation of the Family Medical Leave Act, Plaintiff has suffered damages of lost wages, benefits, bonuses, loss of future pay, benefits, and liquidated damages. Plaintiff has incurred, and will continue to incur attorney's fees and costs in this matter.

49. Insofar as Defendant's conduct was (and is) willful and/or reckless, punitive damages are appropriate under state and federal law.

### COUNTS IV & V

(Retaliation - Family Medical Leave Act - 29 U.S.C. 2601 et seq. and NFEPA)

50. Plaintiff hereby incorporates by reference paragraphs 1-49 as if fully set forth herein.

51. In response to Plaintiff's use of federally protected leave, Defendant took adverse and retaliatory actions against Plaintiff after using protected FMLA leave and while she was still using intermittent leave to take care of her mother. Said conduct violates the Family and Medical Leave Act, 29 U.S.C. §2601, et seq., as amended.

52. As a result of Defendant Mutual's violation of the Family Medical Leave Act, Plaintiff has suffered damages of lost wages, benefits, bonuses, loss of future pay,

benefits, and liquidated damages. Plaintiff has incurred, and will continue to incur attorney's fees and costs in this matter.

53. Insofar as Defendant's conduct was (and is) willful and/or reckless, punitive damages are appropriate under state and federal law.

## COUNT VI

(Age Discrimination- ADEA and NFEPA)

54. Plaintiff hereby incorporates by reference paragraphs 1-53 as if fully set forth herein.

55. Plaintiff was discriminated against as set forth above because of her age, in violation of Nebraska Age Discrimination in Employment Act and the Federal Age Discrimination in Employment Act.

56. At the time Defendant's adverse employment actions, Plaintiff was 64 years old.

57. Plaintiff was highly qualified for her position at Defendant Mutual.

58. Plaintiff complained about the poor treatment to Defendant, but her complaints were disregarded.

59. Plaintiff was disciplined and subjected to adverse employment actions because of her age.

60. Plaintiff has been damaged as a direct and proximate cause of Defendant's discrimination, suffering lost wages, future wages, lost fringe and benefits in an amount to be determined at trial.

61. Defendant's actions were willful entitling Plaintiff to a like sum of money to compensate her for willful age discrimination.

## DAMAGES

62. Plaintiff hereby incorporates by reference paragraphs 1-61 as if fully set forth herein.

63. As a result of Defendant Mutual's age discrimination, retaliation, FMLA violations, state law violations and ADA violation and retaliation, Plaintiff has suffered damages and seeks the following relief:

    a.    Back pay and lost benefits to the time of trial;

    b.    Front pay including retirement and other benefits;

    c.    Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    e.    Punitive damages for Defendant's actual malice or reckless indifference to Plaintiff's federally protected rights;

    f.    Liquidated damages as prescribed by 29 U.S.C. §2617;

    g.    Attorney's fees, expert witness fees and other reasonable costs; and

    h.    Pre-judgment and post-judgment interest.

WHEREFORE, Plaintiff prays for judgment against Defendant for all her general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

Dated this ___ day of February, 2016.

                              SANDRA L. SPESSARD, Plaintiff

BY:      s/Jamie M. Hurst
        Jamie M. Hurst #25256
        MARKS CLARE & RICHARDS, L.L.C.
        11605 Miracle Hills Drive, Suite 300
        Omaha, NE 68154-8005
        (402) 492-9800
        fax: (402) 492-9800
        E-mail: jhurst@mcrlawyers.com
        Attorney for Plaintiff

N:\WDOX\CLIENTS\21823\000\PLEA\00176234.DOC

12


EXHIBIT A

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | [ ] FEPA [X] EEOC | NEB 2-14/15-12-45412-RD  32E-2015-00190 |

Nebraska Equal Opportunity Commission and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) Ms. Sandra L. Spessard | HOME TELEPHONE (Include Area Code) (402) 213-8773 | |
|---|---|---|
| STREET ADDRESS 4704 S 190th St | CITY, STATE AND ZIP CODE Omaha NE 68135 | DATE OF BIRTH 12/4/1949 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME Mutual of Omaha Insurance Company | NUMBER OF EMPLOYEES, MEMBERS More than 500 Employees | TELEPHONE (Include Area Code) (402) 346-7480 |
|---|---|---|
| STREET ADDRESS Mutual of Omaha Plaza | CITY, STATE AND ZIP CODE Omaha NE 68175-1008 | COUNTY Douglas |
| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN | EARLIEST 7/17/2014  LATEST 10/24/2014 |
| [X] RETALIATION  [X] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION | [X] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. I am 64 years old. (DOB: 12-4-1949) and I am a fulltime caretaker for my mother. Respondent hired me on April 11, 2011 most recently as a Work at Home Customer Service Representative. I complained about the discriminatory treatment due to disability by association. Due to my complaints, my association with my mother, and my age, I was disciplined, harassed, subjected to different terms and conditions of employment and receive inferior assignments.

II. I believe that I have been discriminated against on the bases of disability by association, and retaliation in violation of the ADA Amendments Act of 2008, and on the basis of age, in violation of The Age Discrimination in Employment Act of 1967, as Amended, and Section 48-1004(1) of the Nebraska Age Discrimination in Employment Act;

1. My mother's medical condition requires 24 hour care, which I provide. I applied and receive intermittent Family Medical Leave.

2. On July 17, 2014, I received my first disciplinary action from Patrick Acamo, (supervisor, 30s, no known disability by association) and Matt Allen, (supervisor, 30s, no known disability by association) for making 5 errors in a six week period. I was to have received weekly supervisor follow-up and the action was to have expired within 90 days. Mr. Acamo has given no guidance or follow-up and the action remains on my record.

3. On or about July through October, 2014, I was subjected to harassment by Mr. Acamo and David Allen (supervisor, 50s, no known disability by association) to include but not limited to:
a. In July and August 2014, I began experiencing computer system problems that caused me to call the Help Desk frequently. When I asked for assistance, Mr. Acamo and Mr. Matt Allen ignored my requests.
B. During the shift bid for assignments on or about August 28, 2014, Mr. Acamo denied me my favored schedule and assigned me least preferred assignment shift of 9-5:30. I am still working these least favored hours. C. In August and October, 2014, when I asked for assistance with the computer system problems, Mr. Acamco only quoted the At Home Workers' policy and told me that I needed to come into the office. D. On or about September 29, 2014, I experienced computer problems and with Mr. Acamo's suggestion, I was on the phone with the help desk for several hours and Mr. Acamo initially told me that I was take personal time for this assistance and after my objections, Mr. David Allen allowed me to classify this as work time. E. During this time period, Mr Acamo and Mr. David Allen sent daily Instant Messages requesting that I attend meetings, wherein they insisted that I come into work each time I had trouble with my computer system for 60 minutes or longer. In August alone, I called the Help Desk with computer problems 25 times.

Continued on page 2

Sandra L. Spessard vs. Mutual of Omaha Insurance Company
Page 2

4. On or about September 30, 2014, Mr. Acamo and Mr. David Allen told me that due to the numerous computer problems I was experiencing I was to work at the office full time beginning October 6, 2014. Other workers, like Robin Orchard, (Work at Home Customer Service Representative, 20s, disability by association unknown) and Pam Kirschman (Work at Home Customer Service Representative, 40s, disability by association unknown) also experienced computer problems but were not made to come to the office to work.

5. On or about September 30, 2014, I complained to Jackie Soto, (Senior Human Resources Specialist, 40s, no known disability by association) and Peggy Rivedal (Manager Health Services, 50s, no known disability by association) about the discriminatory treatment and that I was being targeted by Mr. Acamo due to my age and disability by association. .

6. On or about September 30, 2014, I sent an email to Shannon Hite (Vice President of Corporate Operations, 30s, no known disability by association) that I was being targeted by Mr. Acamo and Mr. David Allen due to my disability by association and receiving negative treatment.

7. On or about October 8, 2014, Mr. Acamo and Mr. David Allen subjected me to different terms and conditions of employment by demanding that I stop using the Open Span computer system and revert to the older less efficient system, Legacy, and changed my goals because of this change. I was not allowed to call the Help Desk. I was required to come into the office for training on the old Legacy system.

8. I was allowed to continue to work from home but placed on the Legacy system. I asked Mr. David Allen why and he stated that I was being singled out because I had escalated my issues to management.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

State of Nebraska County of Douglas

On this, the 17 day of December, 2014.

The Complainant appeared before me, known to me (or satisfactorily proven) to be the person whose name is subscribed to this instrument, and acknowledged that they executed the same for the purposes therein contained.

I swear or affirm that I have read the above and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

x Sandra L Spessard

Notary Public Beverly J Hazuka

Notary Seal

General Notary - State of Nebraska
BEVERLY J. HAZUKA
My Comm. Exp. Dec. 31, 2018

THE LAW OFFICE OF

# Marks Clare Richards LLC

Elizabeth Stuht Borchers, PC, LLO
Dirk V. Block, PC
Steven J. Riekes
David P. Wilson
John J. Velasquez
Kristina B. Murphree, PC, LLO
Raymond R. Aranza*
Ari D. Riekes

Mark R. Bosworth
David A. Christensen>
Julia A. Cryne**
Jamie M. Hurst
Tracy A. Johnson
Lisa C. Lewis

November 6, 2015

U.S. Equal Employment Opportunity Commission
Oklahoma City Area Office
215 Dean A. McGee Avenue
Suite 524
Oklahoma City, OK 73102

RE: Sandra L. Spessard vs. Mutual of Omaha Insurance Company
Charge # 32E-2015-00190
(Our File No.21823.000)

To whom it may concern:

Please issue a Right-to-Sue letter in the above-entitled matter.

Thank you for your attention to this matter. If you have any questions, please do not hesitate to contact me.

Very Truly Yours,

Jamie M. Hurst
jhurst@mcrlawyers.com

JMH/taa
cc: Sandra Spessard, *via email*

N:\WDOX\CLIENTS\21823\000\CORR\00168827.DOCX



EXHIBIT B

11605 Miracle Hills Drive, Suite 300 • PO Box 542005 • Omaha, Nebraska 68154 • www.mcrlawyers.com
Telephone 402-492-9800 • Toll Free 800-889-9801 • Fax 402-492-9336 • Federal Tax ID: 47-0402011
Also licensed in South Dakota (^)   Iowa (*)   Fluent in Spanish (**)   Of Counsel (>)

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Sandra L. Spessard
4704 S 190th St
Omaha, NE 68135

From: Oklahoma City Area Office
215 Dean A. McGee Avenue
Suite 524
Oklahoma City, OK 73102

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2015-00190 | Marilyn S. Koshiway, Investigator | (405) 231-4359 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Marilyn S. Koshiway_
Holly Waldron Cole,
Area Office Director

November 23, 2015
(Date Mailed)

Enclosures(s)

cc: Sandra L. Maass
Associate General Counsel
MUTUAL OF OMAHA INSURANCE COMPANY
HEADQUARTERS
Mutual of Omaha Plaza
Omaha, NE 68175

Jamie M. Hurst
MARKS, CLARE & RICHARDS, LLC.
11605 Miracle Hills Drive, Suite 300
Omaha, NE 68154


EXHIBIT C

Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.